MAXON *v.* CHADDOCK-CARNEY SALES CO.

1. FACTORS — BROKERS — CONTRACTS — BREACH OF CONTRACT — AFFIRMANCE—DAMAGES.

   Plaintiff alleged a contract with a factor to sell celery at $1.25 a crate at the home market or not to sell at all; the factor shipped some of the celery to a foreign market deducting the extra expense. In a suit for the breach, plaintiff refused to treat it as a conversion of his property, but claimed his right to affirm the sales in the foreign market, and treat them as made in the home market, at whatever price made, allowing nothing for additional expense. *Held,* plaintiff could not at once affirm and disaffirm sales made contrary to contract, and there was no evidence to show the proper amount of damages.

2. SAME—DAMAGES RECOVERABLE—ISSUES.

   Under plaintiff's theory of the case, he might have recovered for foreign broker's fee deducted on one car shown to have been sold f. o. b. home market, had the jury clearly found that the contract was as claimed by him.

Error to Van Buren; Des Voignes, J.  Submitted January 4, 1917.  (Docket No. 27.)  Decided March 29, 1917.

Assumpsit in justice's court by John P. Maxon against the Chaddock-Carney Sales Company for damages for breach of contract. From a judgment for plaintiff, defendant appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Reversed.

*Thos. J. Cavanaugh,* for appellant.

*Earl L. Burhans* and *David Anderson,* for appellee.

Plaintiff, in the year 1914, was a grower of celery, defendant a corporation of which M. S. Carney was president, E. L. Cady vice president, and John B. Chaddock secretary and treasurer, doing business at Decatur, Mich.  A part of the business was shipping celery from Decatur.  It did not buy celery to ship, but Mr. Cady was a grower of celery, and his product, and that of some others, was marketed by this company.  Plaintiff claims, and his testimony tends to prove, that in the year 1914, in October, desiring to sell his celery, he talked first with Mr. Cady and later with Mr. Chaddock about marketing it.  Plaintiff was at the time in Decatur with a load of celery, and his arrangement was made with Mr. Chaddock, the manager of defendant.  Concerning the arrangement, plaintiff testified that Mr. Chaddock, looking at his celery, said,

" 'Your celery is good stuff,' plaintiff saying, 'What is it going to bring me if I put it on?' 'Well,' he says, 'I have four carloads sold at a dollar and a quarter f. o. b. Decatur.' I said, 'What will that leave me?' 'Well,' he says, 'You pay us (15) fifteen cents a case for selling this celery and the lumber bill.' And I said, 'Who pays the rest?' He says, 'They pay it at

the other end.' I says, 'What will that leave me?' We figured it up. He says, 'It will leave you around a dollar eight or ten cents.' * * * I says, 'I will put my celery on at that price, but if it gets any cheaper let me know and I will trench it or ship it myself.' That was our last conversation. He says, 'Bring the celery along; prices are getting better.' That is the words he told me."

Plaintiff continued to deliver celery in crates, slips being issued to him as deliveries were made, containing car number and number of crates of celery, and grading, whether large or small. Deliveries began October 28th and ended November 2d. Plaintiff thus delivered for sale in car 18612, 168 crates; in car 14644, 80 crates; car 141812, 144 crates; car 25333, 39 crates; car 24139, 77 crates; car 22219, 122 crates. In November reports of sales were made to him, from time to time, and checks respectively for $78.05 and $28.75 were received by him. A final statement was accompanied by a check for $196.07. These statements informed the plaintiff of certain charges. For example, under date November 23, 1914, the statement was made for car 18612 as follows:

"146 crates of celery, $1.30, $189.80; 22 crates celery eighty cents, $17.60. Total, $207.40. Stock small and short. Declined to accept as above. Were to have placed in storage rather than accept discount 50 cents per crate. Had several examine and no offers. Rather [weather] hot. Finally adjusted and accepted fifty cents discount, $84.00, $123.40. Lumber and nails, $5.15. Brokerage Minneapolis $15.00. Commission 15 cents, $25.20. Making a total of charges of $45.35. Net proceeds $78.05."

Setting up in his declaration the alleged contract, and claiming a breach thereof, plaintiff alleges that defendant "deducted from the sum of said shipments items of charges which it had no right so to deduct under its agreement with this plaintiff, and made some shipments for a less price than was permissible

under the terms of the agreement above set forth";
the particulars being brokerage charge on car 18612,
$15; on car 14644, freight charge $56.40; on car
141812, brokerage charge $15; on car 25333, storage
$9.75, freight $10.53, brokerage $3.90; on car 24139,
storage $19.25, brokerage $7.70; on car 22219, entire
shipment lost to plaintiff, commission $18.30, "and
plaintiff claims as to this car the difference between
$1.25 per case and any proper charges."

The court ruled that car 22219 and all relating to
it should be withdrawn from consideration. With the
plaintiff's testimony and the evidence furnished by the
receipts, statements, and checks, the plaintiff rested.
The total of the items claimed for, excluding car 22219,
is $159.09.

Testimony for defendant tended to prove that plain-
tiff was informed that defendant would not under any
circumstances buy celery, that it was handling Car-
ney's and Cady's celery, and would handle celery for
others, shipping it along with what they were handling
and disposing of it in the same way, selling as much
as was possible f. o. b. Decatur; that it would be han-
dled upon brokerage basis, and that often brokers
were employed at the other end to sell it, in which
cases plaintiff would be charged a proportionate part
of cost of handling at the other end. It denies that
any promise was exacted or made to notify plaintiff
if celery was selling for less than $1.25 f. o. b. De-
catur, or any statement made as to what the celery
would net the plaintiff. Defendant's brokerage charge
was 15 cents a crate, and plaintiff was told that if
there were other expenses at the other end that also
was charged against the seller. Defendant's testi-
mony also tended to prove that car 18612 was sold
f. o. b. Decatur for $1.25 a crate, and when it reached
its destination was rejected, brokers employed to sell
it and who resold it, for which a charge of $15 was

made and paid for plaintiff's account. So car 141812 was sold f. o. b. Decatur for $1.25 a crate, but defendant had employed a broker to sell that car. Car 14644 was not sold (could not be sold) f. o. b. Decatur, and was consigned to Minneapolis as the best market. It was later sold there for $1.25 a crate. Car 24139 could not be sold f. o. b. Decatur, and was sent to Chicago, and could not be sold there. The celery was put in cold storage, and later 110 crates sold for $1.75, and 30 crates for $1.50. Of these, 77 crates were plaintiff's, and he was credited with sale at $1.70 a crate, and charged with his proportion of the expense. Car 25333 was in like manner disposed of; the celery being put in cold storage in Chicago, where it was finally sold for $1.25 a crate.

Defendant's motion for a directed verdict was refused, and the jury was instructed there was but one question of fact, and it was whether the contract which was made was the one testified to by plaintiff, saying that if upon that point they found for plaintiff the amount of damages recoverable would be "the sum of the unauthorized charges for freight, brokerage, and storage," as they found them established by the evidence, and interest from January 15, 1915, at the rate of 5 per cent. Certain of defendant's requests to charge were refused. The jury returned a verdict November 15, 1915, for plaintiff for $122.38, from which it would appear that the jury allowed plaintiff for the items of freight and storage only (refusing him allowance for brokerage charges at the other end), amounting to $117.49 and interest, $4.89. A motion for a new trial was refused, and reasons therefor were given. This motion was based upon the refusal of the court to charge as requested to do, and upon what occurred after the trial and before a verdict was rendered, when the jury returned for further instructions.

Appellant contends that the measure of damages, upon plaintiff's theory of the case, is the value of the property at the time it was converted by the defendant, less what defendant paid and tendered therefor. Again it is said:

"It was and is our contention that the proper measure of damages would be the difference between what the plaintiff's celery was actually worth in the village of Decatur at the time it was loaded, or what it was actually worth at the time it would be put on the market if trenched, less what the plaintiff received for it from the defendants."

Because there was no testimony which permitted the application of the rule, it is urged that the court should have directed a verdict. Plaintiff says:

"We did not prosecute this suit to recover from this defendant on any claim that the defendant converted the celery or because liable for its value"

—and that violation of instructions by the broker did not deprive plaintiff of his ownership of the celery, but defendant sold plaintiff's celery and received money for it, and out of it has retained some that under the contract belongs to plaintiff, and that the money so retained is what he seeks to recover.

OSTRANDER, J. (*after stating the facts*). The novel contention of plaintiff is the reason for so minute a statement of the facts. While the terms "broker" and "brokerage" are used in the record and briefs, the testimony of both parties indicates that defendant was a factor, intrusted with the possession of the property to be sold, with power to sell it in its own name, etc. 9 C. J. pp. 510, 511.

Assuming that it was defendant's duty to sell f. o. b. Decatur for $1.25 a case or more, or not to sell at all, and that it violated the duty by selling elsewhere at $1.25 a case, and more, how was plaintiff injured, and

how can his damages be computed? Clearly, he is not entitled to at once affirm and disaffirm a sale made elsewhere at $1.70 a case; the price received depending in part upon delivery in the foreign market instead of at Decatur. And if a car was sold f. o. b. at Decatur at $1.25 a case, and was, without the broker's fault, rejected, or refused, by the buyer, and after expense had been made and paid, was sold at the same price, in the foreign market, why should the broker be charged with the extra expense? Plaintiff says to defendant:

"It was your duty to sell the celery for at least $1.25 a crate f. o. b. Decatur. If you could not do that, you were to notify me, and I then would have either trenched it or sold it myself. You violated this duty, and in consequence I have been injured."

But what injury has he proved? He refuses to treat the breach of duty as a conversion of his property and sue for its value, in which case he would be obliged to prove its value when converted. He treats all sales as made at Decatur at whatever price they were made.

To sustain the contention of plaintiff is not to discover and make good his loss, to award him compensation, but is rather to impose a penalty for breach of the contract. With respect to one car only, No. 141812, is it clear that it was sold f. o. b. at Decatur, and that plaintiff was charged a commission, or brokerage fee of the foreign broker, in which case it would appear that the defendant deducted something from money belonging to plaintiff. In all other cases there are facts and circumstances to be considered affecting the question of the price received by defendant for the produce. If the jury had clearly found that the contract testified to by plaintiff was made, this sum plaintiff might recover in this action upon the announced theory of his case. But it is not clear that

the jury found the contract to be the one stated by plaintiff. The jury, apparently, disallowed all brokerage fees.

It is obvious that, without considering any other of the questions which are presented (they are not likely to arise upon another trial), the judgment must be reversed, and new trial granted, with costs to appellant.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.